Stephen M. Doniger, Esq. (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs, Esq. (SBN 235718)
scott@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile:  (310) 417-3538
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FABRICS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> PAT REGO, INC.; et al., <br><br> Defendants. | Case No. CV 10-05988 PSG (RZx) <br> *The Honorable Philip S. Gutierrez Presiding* <br><br> **NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION PURSUANT TO FED. R. CIV. P. 56; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SHAR SIMANTOB AND SCOTT A. BURROUGHS** <br><br> **[Statement of Uncontroverted Facts and Conclusions of Law;[Proposed] Order Submitted Concurrently Herewith]** <br><br> Date: November 7, 2011 <br> Time: 1:30 p.m. <br> Courtroom: 880 |

i

*TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:*

PLEASE TAKE NOTICE THAT on November 7, 2011, in Courtroom 880 of the Roybal Courthouse, located 225 East Temple, Los Angeles, CA 90012, United Fabrics International, Inc. ("UNITED") will move pursuant to Federal Rule of Civil Procedure 56 for summary adjudication of liability as to Pat Rego, Inc. ("REGO") and Lane Bryant, Inc. and Lane Bryant Purchasing Corp. (collectively "BRYANT") for copyright infringement.

UNITED can establish that it is entitled to such a determination as a matter of law on the following grounds: (1) Plaintiff owns, and holds a valid copyright in, the two-dimensional artwork – a textile design with design title VALETTA– at issue in this matter ("Subject Design"), granting it a rebuttable presumption of ownership of the Subject Design; (2) REGO ordered samples of fabric bearing VALETTA directly from UNITED prior to the infringement; (3) REGO had created a slightly modified version of VALETTA which it then printed on garments and sold to BRYANT. ("Infringing Garments"); (4) BRYANT then sold the Infringing Product to the public; and (5) REGO and BRYANT failed to produce any evidence of any affirmative defenses.

TDefendants, in manufacturing, selling, and distributing the Infringing Product, have violated Plaintiff's copyrights in the Subject Design. Given the foregoing, Plaintiff seeks an adjudication of the following issues:

1) Plaintiff owns a valid copyright for the Subject Design;

2) REGO had access to the Subject Design;

3)  Defendants are liable for copyright infringement due to their purchase, distribution, and sales of the Infringing Product; and

4) REGO is liable for willful infringement because it committed its infringement with knowledge that UNITED owned the Subject Design.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

1      This Motion is based on the attached Memorandum of Points and Authorities,

2  the Statement of Uncontroverted Facts, and the Declarations of Jae Simantob and

3  Scott A. Burroughs, Esq., filed herewith, the papers and evidence on file in this case,

4  and such evidence and argument as may be received at the hearing.

5      The conference of counsel required by Local Rule 7-3 was held by the parties

6  on August 31, 2011. Defendants would not stipulate to liability.

7      UNITED submits that there is no question as to liability, and respectfully

8  requests that this Court grant this motion.

9                  Respectfully submitted,

10 Dated: September 27, 2011        DONIGER / BURROUGHS

11

12                 By: /S/ Scott A. Burroughs

13                 Scott A. Burroughs

                    Attorney for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

## **TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................................1

II.   STATEMENT OF FACTS ....................................................................2

III.  ARGUMENT .......................................................................................5

  1.   Plaintiff's Ownership Of The Subject Design Is Beyond Reasonable Dispute..6

    (a)    The Subject Design's registration is valid ....................................6

       (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—...........................................................12

       (2) In any case in which inaccurate information described under paragraph

  2.   Defendants Infringed Plaintiff's Rights in the Subject Design.........................13

    (a) Direct infringement – importation, distribution, purchase, and sales

    (b)    Vicarious liability ...............................................................17

    (c) Willful Infringement ................................................................17

IV.   SUMMARY ADJUDICATION IS APPROPRIATE…………………….......19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Addisu v. Fred Meyer, Inc.* 198 F. 3d 1130, 1134 (9th Cir. 2000) ................................. 5

*Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.1987) .................................................. 5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2505, 91 L. Ed. 2d 265 (1986) ..... 5

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 293 (9th Cir.1997) .................................................................................................... 17

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir. 1994) ...................................................................................................................... 9

*Dolman v. Agee*, 157 F.3d 708, 711, 715 (9th Cir. 1998) ........................................... 18

*Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980) ........................ 7

*Eckes v. Card Price Update*, 736 F.2d 859, 861-62 (2d Cir. 1984) ............................. 9

*Eve of Milady v. Impression Bridal, Inc.*, 986 F. Supp. 158, 162 (S.D.N.Y. 1997) ..... 4

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2nd Cir.1971) .................................................................................................. 17

*Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999) ............................................. 7

*Hearst Corp. v. Stark*, 639 F. Supp. 970, 974 (N.D. Cal. 1986) ................................. 9

*Jason v. Fonda*, 526 F.Supp. 774, 775 (C.D.Cal.1981) ............................................. 14

*Jedsen Engineering, Inc. v. Spirit Construction Services, Inc.*, 720 F. Supp. 2d 904 (S.D. Ohio 2010) .................................................................................................... 9

*Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1156 (9th Cir. 2010) ............................................................................................................................ 10

*Just in Materials Designs, Ltd. v. Arise Textile, Inc.*, 1980 U.S. Dist. LEXIS 10822, *4-5 (S.D.N.Y. 1980) ............................................................................................ 17

*Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) 15, 16

*L.A. Printex Industries v. Kohl's Corporation* CV10-4653 AK (C.D. CA 2011) ....... 11

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140 (9th Cir. 2003) ........ 7

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

1    *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) ....................................8

2    *Lipton v. Nature Co*., 71 F.3d 464, 471 (2d Cir.1995) ................................................13

3    *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3rd Cir.

4      1990) ...............................................................................................................................9

5    *Metcalf v. Bochco*, 294 F. 3d 1069, 1075 (9th Cir. 2002).........................................15

6    *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 US 913, 930-931 (2005) 17

7    *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031 (9th Cir. 1992)......................7

8    *Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1093 n.4 (2d Cir. 1977)4,

9      15

10    *Original Appalachian Artworks, Inc. v. Toy Loft, Inc*., 684 F.2d 821, 829 (11th

11      Cir.1982) ......................................................................................................................16

12    *Publishing Corp. v. Columbia Artists Management, Inc* ............................................17

13    *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc*., 482 F. Supp. 980, 988 (D.C.N.Y.

14      1980) ...............................................................................................................................9

15    *S.O.S., Inc. v. Payday, Inc.* 886 F.2d 1081 (9th Cir. 1989)..........................................6

16    *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir. 1984) ......................................................14

17    *Shaw v. Lindheim*, 919 F.2d at 1356 (9th Cir. 1990) ................................................15

18    *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157

19      (9th Cir.1977).................................................................................................................15

20    Smith v. Jackson, 84 F.3d 1213, 1220 (9th Cir.1996)................................................13

21    *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1094 (2d Cir.

22      1974) .............................................................................................................................16

23    *Spectravest, Inc. v. Mervyn's, Inc.*............................................................................7

24    *Spectravest, Inc. v. Mervyn's, Inc.*, 673 F. Supp. 1486 (N.D. Cal. 1987) ...................7

25    *Stewart v. Wachowski*, 574 F. Supp. 2d 1074 (C.D.C.A. 2005) ...............................14

26    *Stratchborneo v. Arc Music Corp*., 357 F.Supp. 1393, 1403 (S.D.N.Y.1973) ...........14

27    *Tarin v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997)......................5

28    *Testa v. Janssen*, 492 F.Supp. 198, 203 (W.D.Pa.1980)............................................14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.,* 630 F.3d 1255 (9th Cir. Cal. 2011) .......7

*Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997)................................8

*Yurman Design, Inc. v. PAJ, Inc*., 262 F.3d 101, 112 (2d Cir. 2001) .........................18

**Statutes**

17 U.S.C. § 106 ................................................................................................5

17 U.S.C. § 602 ................................................................................................6

17 U.S.C. §106(2) .............................................................................................5

17 U.S.C. §411 ...............................................................................................12

**Rules**

698 F.2d 966 (9th Cir. 1982) ...........................................................................14

741 F.2d at 904 ...............................................................................................14

Fed. R. Civ. P. 56(c) ........................................................................................5

**Other Authorities**

Nimmer on Copyright § 12.04[A] ....................................................................17

Nimmer on Copyright, § 13.02[A], at 13-19 (1999)..........................................14

Nimmer on Copyright, § 7.20, 7-148.1 (1985) ...................................................9

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Defendants in this case have committed copyright infringement by importing, distributing, and selling garments which bear a knock-off of Valetta, UNITED's proprietary paisley and geometric border patter ("Subject Design"). The infringement is especially egregious because REGO knew the Subject Design was proprietary to UNITED prior to the infringement and was negotiating with UNITED to purchase fabric bearing the Subject Design right up until the point when REGO decided to instead have an overseas factory copy the Subject Design and print it on fabric. REGO then bought and imported the knock-off fabric at a lower price in an attempt to increase its profit margins on the garments it then sold to BRYANT ("Infringing Garments").

BRYANT then sold the Infringing Garments to the public. UNITED discovered that BRYANT was selling garments that bore a knock-off of one of its proprietary designs, and confronted its customer, REGO, in an attempt to determine why and how REGO bought and sold fabric bearing a knock-off of one of UNITED's designs. REGO admitted that it provided the BRYANT garments, and that the BRYANT garments were created from fabric purchased from an overseas factory, and not UNITED.

This action followed. During its pendency, Defendants have failed to provide any evidence of any affirmative defenses, such as authorization or license to use the design, or independent creation. REGO also failed to provide a number of incriminating e-mails that have now been recovered by UNITED, as discussed below. Defendants have been forced to go to these lengths given the clear and straightforward nature of the copyright infringement. Defendants' positions, however, are not well-taken, and summary adjudication in favor of UNITED is appropriate.

This motion is brought because, as set forth more fully below, there is no reasonable dispute that (1) UNITED holds a valid copyright registration in the Subject Design, granting it a rebuttable presumption of ownership of the Subject Design; (2) REGO had clear access to the Subject Design; (3) Infringing Garments bearing a substantially similar and unauthorized reproduction of the Subject Design were purchased and sold by Defendants; (3) No evidence of any affirmative defenses has been proffered by Defendants.

Given the above, UNITED respectfully requests that this motion be granted, so the issues can be streamlined and parties can proceed to trial solely on the issue of damages.

## II.    STATEMENT OF FACTS

UNITED is a Los Angeles-based textile company. Simantob Decl. ¶2. It creates original textile designs, or purchases the exclusive rights to designs that are created by reputable art studios.  Id.  It is critical to UNITED's business to be the exclusive source of its designs because this design portfolio allowed it to stand out in the market and compete against other companies that charged lower rates but were unable to offer trendy, fashion-forward designs. Id.

UNITED owns the rights to an original work of art that it developed for use on printed fabrics. Simantob Decl. ¶ 3; Ex. 1. UNITED has entitled this work "Valetta" ("Subject Design").  Id.; Ex. 1. The Subject Design was created by UNITED's design team using source material that UNITED owned all rights in and had registered under U.S. Copyright No. Vau 994-046. Id. The Subject Design was developed and finalized by UNITED and then prepared and formatted for use on textiles. Simantob Decl. ¶ 4. The Subject Design at all relevant times was exclusively owned by UNITED. Id. Prior to the infringement, the Subject Design was registered with the United States Copyright Office, where it was assigned U.S. Copyright No. VAu 978-308. Id. Ex. 2. In registering the Subject Design, UNITED paid the required fee and

deposited a copy of the Subject Design with the Copyright Office. Simantob Decl. ¶ 5.

UNITED has sampled and sold over sixty thousands of yards of fabric bearing the Subject Design to its customers.  Simantob Decl. ¶ 6. The fabric was then manufactured into thousands of garments for sale at a wide variety of retail stores.

One of these customers was REGO. In October of 2008, REGO ordered from UNITED yardage of sample fabric printed with the Subject Design. Simantob Decl. 7; Ex. 3. REGO did this sampling on at least two occasions. Id. Thereafter, REGO interfaced with UNITED in regard to fabric bearing the Subject Design, ordering from UNITED an additional ten yards of sample fabric bearing the Subject Design in March of 2009. Simantob Decl. 8; Ex. 4. At the time of this March 2009 purchase, Pat Rego (of REGO) contacted UNITED and personally requested the Subject Design fabric. Simantob Decl. ¶10; Ex. 5 In requesting the Subject Design fabric, Pat Rego wrote "This is the print we like." Id. The fabric requested by REGO was in the same color scheme as the fabric that was later used by REGO to create the Infringing Garments. Id.

REGO liked the print, but apparently did not like UNITED's price point for fabric bearing the print. Instead of purchasing from UNITED, REGO sent UNITED's design overseas to be knocked-off and printed on fabric. Simantob Decl. ¶9; Burroughs Decl. ¶2; Exhibit 7. The knock-off had to be very close to the original because REGO had already sold to BRYANT a garment order by showing BRYANT the UNITED sample fabric that REGO had purchased from UNITED. Simantob Decl.¶10; Ex. 8. Defendants' knock-off is displayed below on the right; on the left is the Subject Design:



The copying is self-evident[1]. The elements, motifs, layout, depth of scale, scope, and colors are one and the same, with the only differences being small modifications made at REGO's direction in an attempt to hide its infringement

To make matters worse, the above fabric bearing a knock-off of the Subject Design was purchased by REGO from an overseas supplier **just one month** after

---

[1] *See, e.g., Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1094 (2d Cir. 1977) ("When the Joan Fleetwood Spice fabric is placed over a portion of the Novelty fabric, the design, dimensions and colors match-up and the appearance is of one fabric."). Moreover, any slight discrepancies between the designs "are eclipsed by the almost total likeness in the arrangement and placement of the designs. . . ." *Eve of Milady v. Impression Bridal, Inc.,* 986 F. Supp. 158, 162 (S.D.N.Y. 1997).

REGO sent the email to UNITED stating to UNITED that REGO "liked" the Subject Design. Burroughs Decl. ¶2; Ex. 7.   REGO then had the knock-off fabric converted into garments, and imported them into the United States, where it sold them to BRYANT. Decl. Simantob ¶9; Ex. 6. BRYANT then sold the garments to the public.

Given the above, it is clear that REGO and BRYANT are liable for copyright infringement. As such, UNITED respectfully requests that this motion be granted.

## III.   ARGUMENT

Plaintiff's claims are ripe for entry of summary adjudication as to the liability of LCI for infringement of the Subject Design.  Under Fed.R.Civ. P. 56(c), summary judgment must be granted if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Tarin v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997). The moving party shifts the burden by presenting evidence to establish the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2505, 91 L. Ed. 2d 265 (1986). This showing must be substantive, a "scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of, material fact." *Addisu v. Fred Meyer, Inc.* 198 F. 3d 1130, 1134 (9th Cir. 2000).

To succeed on its copyright infringement claim, Plaintiff must "show ownership of the allegedly infringed material and […] demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. See 17 U.S.C. § 501(a) (infringement occurs when alleged infringer engages in activity listed in § 106); see also *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.1987). One of these rights is the right to prepare derivative works from the copyrighted material. 17 U.S.C. §106(2). Another is the exclusive right to distribute and sell product bearing the copyrighted work 17 U.S.C. §106(3)("to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer

- 5 -

of ownership, or by rental, lease, or lending").  It is also illegal to import infringing product into the United States. 17 U.S.C. § 602.

The Defendants have violated the above statutes, and no genuine issue of material fact exists as to Plaintiff's ownership of the Subject Design, or Defendants' infringement. As such, summary adjudication on the issue of liability is appropriate.

### 1. **Plaintiff's Ownership Of The Subject Design Is Beyond Reasonable Dispute**

The only evidence in this case regarding Plaintiff's ownership of the Subject Design is that said design was an original work of art developed and formatted in repeat[2] by UNITED for use on fabric.  There is absolutely no evidence that said artwork is unoriginal or not copyrightable. Moreover, Plaintiff holds a duly-issued copyright registration which covers the Subject Design, thereby creating a presumption of Plaintiff's ownership.  Ex. 2.

Defendants have failed to rebut this presumption with competent and persuasive evidence.  Because no such evidence exists in this case, the first element of Plaintiff's claim – ownership of a copyright – is firmly established.

The only contrary "evidence" that Plaintiff anticipates from Defendants is the unfounded assertion that Plaintiff's registration is somehow invalid. This argument is a red herring intended to distract the Court from the clear infringement of LCI, and, in any event, is now moot.

*(a)    The Subject Design's registration is valid*

There is no question that the registration for the Subject Design is valid. A certificate of registration made before or within five (5) years of first publication of the registered work is *prima facie* evidence of the validity of the copyright.  17 U.S.C. §410(c); *S.O.S., Inc. v. Payday, Inc.* 886 F.2d 1081, 1085 (9th Cir. 1989)

---

[2] "In repeat" is a term of art meaning that a designer develops a design so that it looks consistent and proper as it is repeatedly printed across the bolts of fabric.

(citing *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980)). It is also *prima facie* evidence of the validity of the facts stated in the certificate, including ownership, and shifts the burden to defendants to offer proof that these facts are false. 17 U.S.C. § 410(c); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144-45 (9th Cir. 2003); *see also N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) ("Under our copyright law, the registration of the copyright certificate itself establishes a prima facie presumption of the validity of the copyright in a judicial proceeding. . . .").

This presumption requires that the party challenging the registration prove that it is invalid. *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. Cal. 2011) (defendants' argument that plaintiff provided "no evidence" of validity of statement in a copyright registration fails because the copyright registration provides a presumption of validity that must be rebutted by defendants); *see also Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)(alleged infringer responsible for rebutting presumption).[3] In this case, all evidence establishes Plaintiff's ownership of the Subject Design. In contrast, there is no probative evidence to rebut the presumption of Plaintiff's ownership of a valid copyright.

The requirements for the registration of an unpublished collection are set forth in the *United Fabrics Int'l, Inc.* case, which held:

> Very few cases have considered the unpublished-collection-of-works category of copyright registrations. One case that did is *Szabo v. Errisson*, 68 F.3d 940 (5th Cir.1995), abrogated on other grounds by Reed Elsevier, Inc. v. *Muchnick*, ___ U.S. ___, 130 S.Ct. 1237, 176 L.Ed.2d 17 (2010). There, the

---

[3] Courts in this Circuit have looked to the Second Circuit in analyzing copyright infringement, in the context of fabric designs. As the Northern District of California observed in *Spectravest, Inc. v. Mervyn's, Inc.,* "Since the fabric industry is primarily based in New York, much of copyright litigation concerning fabric design has been centered in the Second Circuit. An examination of decisions from the Second Circuit is helpful to the determination in this matter." 673 F. Supp. 1486, 1493 (N.D. Cal. 1987).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

copyright claimant registered a single unpublished collection of works entitled "Scott Szabo's Songs of 1991." Id. at 941. In a footnote, the Fifth Circuit explained that "'Scott Szabo's Songs of 1991' satisfies [the unpublished single-work] requirements because it was assembled in an orderly form with a single title identifying the collection as a whole, and Szabo is the sole author and copyright claimant of the individual songs in the collection." Id. at 941 n. 1. We agree with the Fifth Circuit's approach, which is consistent with the text of section 202.3(b)(4).

Id. at 1259.

In this case, there is no dispute that UNITED's registration contains a number of textile design that were "assembled in an orderly form," with a "single title" – in this case "2009 Border Collection I," and UNITED is the author and copyright claimant for the collection. As such, the registration is beyond challenge.

Even if an error had been made, an innocent error is insufficient to invalidate a registration. To refute the validity of a copyright, the infringer must come forward with substantial evidence of **fraud**. It is settled law that "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless . . . the claimant intended to defraud the Copyright Office by making the misstatement." *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); *accord Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486-87 (9th Cir. 2000); see also Nimmer, § 7.20 (absent fraud, "a misstatement or clerical error in the registration application . . . should neither invalidate the copyright nor render the registration certificate incapable of supporting the infringement action"). "A party seeking to establish a fraud on the Copyright Office, and thereby rebut the presumption of copyright validity, bears a heavy burden." *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) (citing Nimmer, § 7.20[B]).

Courts have traditionally treated innocent errors contained in an application for a registration certificate with leniency. Nimmer, § 7.20[B], n.18. It is all but settled law that an inadvertent error, even if material, will never preclude a copyright infringement action where the work would have been accepted for registration if the

application contained a correct statement of facts.  *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3rd Cir. 1990) ("that an inadvertent omission from a registration application will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the courts"); *Data Gen. Corp. v. Grumman Sys. Support Corp*., 36 F.3d 1147, 1161–62 (1st Cir. 1994) ("It is well established that immaterial, inadvertent, errors in an application for copyright registration do not jeopardize the validity of the registration"); *Eckes v. Card Price Update,* 736 F.2d 859, 861-62 (2d Cir. 1984) ("Only the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid'") (quoting *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc*., 482 F. Supp. 980, 988 (D.C.N.Y. 1980)); Nimmer, § 7.20[B], n.19 (a misstatement in the registration application does not "render the registration certificate incapable of supporting an infringement action"); *Jedsen Engineering, Inc. v. Spirit Construction Services, Inc*., 720 F. Supp. 2d 904 (S.D. Ohio 2010) (court refused to invalidate a registration on the basis of a putative error in the publication entry, finding the publication entry error was not a material misstatement, and would not affect validity); *Hearst Corp. v. Stark*, 639 F. Supp. 970, 974 (N.D. Cal. 1986) (court specifically rejected defendants' challenge based on an incorrect publication information, because "[m]isstatements or errors in a registration application, unless by fraud, do not invalidate the copyright or render the registration certificate incapable of supporting an infringement action." (citing 2 Nimmer on Copyright, § 7.20, 7-148.1 (1985)).

   This doctrine of leniency in connection with registration formalities is so established that most well-known treatises in the field adopt it unequivocally. Nimmer on Copyright, § 7.20[B] ("The courts generally have been most lenient . . . with respect to any innocent error contained in an application for a registration certificate"); 1 Paul Goldstein, COPYRIGHT § 3.12.3, at 345 (1989) ("Courts have

- 9 -

1   excused innocent errors or omissions affecting virtually every material aspect of a

2   copyright registration application.").

3        This axiom was recently affirmed in *Jules Jordan Video, Inc. v. 144942*

4   *Canada Inc.,* 617 F.3d 1146, 1156 (9th Cir. 2010).  In this case, the Ninth Circuit

5   overturned a ruling invalidating the plaintiff's registration. The District Court's ruling

6   was made, in part, on the grounds that the registration set forth the wrong name for

7   the author of the work. In reversing, the Circuit called the ruling "legally erroneous,

8   inequitable and illogical" because no party other than the plaintiff had the right to

9   claim ownership to the works, and no fraud on the Copyright Office was established.

10  Id. at 1156.

11       Without a showing of fraud, a registration must be found valid. As Professor

12  Nimmer explains: "defendants have frequently challenged the court's subject matter

13  jurisdiction based on faulty registration. With Supreme Court clarification that

14  registration does not rank as jurisdictional, that argument no longer holds water."

15  Nimmer on Copyright §7.18(C)(4) (citations omitted). Nimmer explains when the

16  Court should entertain inquiries into the registrability of works and when it should

17  not by comparing two distinct situations:

18       • *Case A.* Plaintiff files suit, based on infringement of her
19       20-page short story, 100-page screenplay, or 300-page
         novel. In these instances, there may be no reasonable
20       dispute whether plaintiff owns a copyright in her work.
         Instead, defendant will interpose a defense of lack of
21       access, or of substantial similarity, or laches, or otherwise.
22       • *Case B.* Plaintiff files suit, based on infringement of his
23       graphical work consisting of a single geometric shape, or
         his sphere composed of elastomeric filaments radiating
24       from a core. In these instances, the dispute as to whether
         plaintiff's work is copyrightable lies at the core.
25

26  Id. §7.16(B)(3)(b)(vi).  As Nimmer explains, "when *Case A*-type matters arise, courts

27  should not be waylaid into inquiries regarding registrability [because]… post-
28

- 10 -

*Muchnick* wisdom is that… given no actual dispute whether the Copyright Office will process the claim in due course, no impediment exists to move the case forward." Id. Further, "when *Case B*-type matters arise, then courts should not immediately proceed to judgment, but should instead stay proceedings to allow the Copyright Office to weigh in with its special expertise regarding copyrightability of plaintiff's work." Id.

In a recent case, *L.A. Printex Industries v. Kohl's Corporation* CV10-4653 AK (C.D. CA 2011), the Honorable Alex Kozinski, Chief Judge of the Ninth Circuit Court of Appeals, presiding by designation over a civil trial, unequivocally rejected a challenge to the validity of a registration on the grounds that there was an error in the publication section of the registration.  Judge Kozinski made clear that absent fraud or issues going to the registrability of work (i.e., ownership and originality), a copyright registration will not be invalidated. At the hearing, Judge Konzinksi stated as follows:

- "...it's one thing to say you invalidate the copyright because it's not an original work, it doesn't meet a substantive requirement. It's another thing to say that you invalidate a valid copyright by the copyright holder because there was a mistake in the registration. They're very different – quite different animals, aren't they?" Transcript 30:2-9.
- "...if you are a valid copyright holder, you actually own the work, but if you make a small, substantive, technical mistake, non- -- you know, not in an effort to defraud, if you just make a technical mistake in the registration process, it does not invalidate a copyright..." Transcript 32:7-11.
- "All right. All right. I'm going to rule that any defect in the registration process does not go to the validity of the copyright, and that's that. So you can try to prove fraud on the copyright office." Transcript 43:2-4.

Burroughs Decl. ¶2, Ex. 9 (true and correct excerpts from the transcript).

Chief Judge Kozinski's analysis is pitch-perfect. Without a showing of fraud, errors on a registration that do not go to ownership cannot invalidate the registration. Despite this clear doctrine, Plaintiff anticipates Defendant will attempt to characterize putative defects in Plaintiff's registration as "fraudulent"; however, the mark of fraud is whether Plaintiff is attempting to claim rights that it knew it did not possess.  In the instant matter, no party other than UNITED has the right to claim the artworks at issue, and there simply can be no claim of reliance or fraud. As such, this motion must be granted.

If the firm position taken by this Circuit is not enough, in 2008 Congress passed the Prioritizing Resources and Organization for Intellectual Property Act ("PRO-IP Act") in an effort to ensure that copyright infringement actions were not dismissed because of the harmless technical issues with copyright registrations.  17 U.S.C. §411.  This Act, in part, revised 17 U.S.C. § 411 to preclude dismissal of infringement actions when minor errors existed in the registration.  Specifically, it provides in relevant part that:

> (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—
>> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; **and**
>> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
> (2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b) (emphasis added).  This requirement is conjunctive – there must be intent to include inaccurate information **and** that inaccurate information must be so material as to result in a denial of the registration had it been made known.

1   In this case, there is no evidence whatsoever that anyone other than Plaintiff

2   owns the Subject Design or that the Subject Design would have been rejected for

3   registration by the Copyright Office when it was registered prior to the infringement.

4   There is also no evidence of fraud or bad faith intent. So owing, there is no basis to

5   challenge either UNITED's ownership of the Subject Design or the validity of that

6   work's copyright registration, and the first element of "ownership" is ripe for

7   summary adjudication.

8   **2.  Defendants Infringed Plaintiff's Rights in the Subject Design**

9   REGO accessed the Subject Design directly from UNITED and then knocked

10  it off and slapped it on garments that it sold to BRYANT. This is willful

11  infringement. BRYANT's subsequent sale of the Infringing Garments is also

12  infringement, and it must disgorge the ill-gotten gains realized through its sales of the

13  Infringing Garments. As set forth in full below, UNITED has satisfied its burden in

14  proving liability for infringement.

15  *(a)    Direct infringement –distribution, purchase, and sales*

16  To prove infringement, UNITED must show that Defendants had access to its

17  work, and copied that work. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir.1996)

18  (citation omitted). It can do so, as follows:

19  *i.    Access*

20  To prove direct liability, Plaintiff must first show that the Defendants had a

21  reasonable opportunity to view the Subject Design, or that the designs are so

22  strikingly similar that access can be presumed.  *Three Boys Music Corp.,* 212 F.3d at

23  483;  *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir.1995)(when two designs are "so

24  strikingly similar as to preclude the possibility of independent creation, copying may

25  be proved without a showing of access."), *citing Smith v. Jackson*, 84 F.3d 1213,

26  1220 (9th Cir.1996) and *Baxter,* 812 F.2d at 424, n. 2 ("Proof of striking similarity is

27  an alternative means of proving `copying' where proof of access is absent"), *cert.*

28  *denied*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987); *Selle v. Gibb*, 741 F.2d

- 13 -

896, 903 (7th Cir. 1984) (a striking similarity is one sufficiently unique or complex as to make it unlikely that it was independently created).

Access can be shown directly when it is shown that the alleged infringer had a "reasonable opportunity" or "reasonable possibility" of viewing the plaintiff's work. *Three Boys Music Corp.,* 212 F.3d at 482; citing  4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.02[A], at 13-19 (1999); *Jason v. Fonda*, 526 F.Supp. 774, 775 (C.D.Cal.1981), aff'd, 698 F.2d 966 (9th Cir. 1982). In this case, REGO accessed the Subject Design directly from UNITED, obtaining sample fabric bearing the Subject Design and communicating with UNITED about purchasing, and purchasing fabric bearing the Subject Design. REGO then worked with BRYANT to distribute and sell the Infringing Garments. There is no question that a link of accession has been established.

Even if access were not so manifest, infringement would still be found because the two designs at issue are strikingly similar. To establish "striking similarity" "plaintiffs must demonstrate that `such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source.'" *Testa v. Janssen*, 492 F.Supp. 198, 203 (W.D.Pa.1980) (quoting *Stratchborneo v. Arc Music Corp*., 357 F.Supp. 1393, 1403 (S.D.N.Y.1973)); see also *Stewart v. Wachowski*, 574 F. Supp. 2d 1074 (C.D.C.A. 2005)("to prove that certain similarities are `striking,' plaintiff must show that they are the sort of similarities that cannot satisfactorily be accounted for by a theory of coincidence, independent creation, prior common source, or any theory other than that of copying. The similarities should be sufficiently unique or complex as to make it unlikely that both pieces were copied from a prior common source, ... or that the defendant was able to compose the accused work as a matter of independent creation"), quoting *Selle*, 741 F.2d at 904. The designs in this case are so similar that independent creation is just not plausible. In addition, no evidence of independent creation has been adduced. As such, UNITED satisfies this prong.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    *ii.  Inverse Ratio Rule*

  As shown above, it is beyond dispute that REGO had access to fabric bearing the Subject Design. As such, a lesser showing of substantial similarity is required to prove infringement. *Shaw v. Lindheim*, 919 F.2d at 1356 (9th Cir. 1990) (the defendants' admission of access was sufficient to apply the inverse ratio rule, as well as a factor to be considered in favor of the plaintiff); See also *Metcalf v. Bochco*, 294 F. 3d 1069, 1075 (9th Cir. 2002). The Ninth Circuit recognizes that issues of access and substantial similarity are "inextricably linked" and imposes a *lower* standard of proof of substantial similarity where a *high degree of access* has been shown. Id. Given the lessened requirement of similarity in cases where access is established, there is no doubt that substantial similarity exists.

    *iii.  Copying*

  The design on the Infringing Garments sold by REGO and BRYANT was clearly copied from UNITED's Subject Design. If an "average lay observer would recognize the alleged copy as being appropriated from the copyrighted work," then the requisite similarity exists to establish infringement. *Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1093 n.4 (2d Cir. 1977). The Ninth Circuit employs a bifurcated test for substantial similarity – consisting of an extrinsic test and an intrinsic test. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977). The "extrinsic test" is an objective comparison of specific expressive elements.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). The "intrinsic test" is a subjective comparison that focuses on "whether the ordinary, reasonable audience" would find the works substantially similar in the "total concept and feel of the works." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (internal quotation marks and citation omitted).

  In this case, the designs are so similar that a brief review reveals that UNITED can satisfy both tests. The specific elements and motifs of both designs are

- 15 -

substantially similar and are laid out across the design's frame in the same size, ratio, and scope. The colors[4], hues, and depths of the designs are also similar. The designs are repeated across the fabric in the same dimensions and sequence. When you compare the designs, the only conclusion one can draw is that the overall look and feel of the designs is substantially similar.

If the allegedly infringing design appears more likely than not to have been "appropriated from the copyrighted work," then the requisite similarity exists to establish infringement. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir.1982). The only conclusion a trier of fact can reach after reviewing the designs at issue in this case is that the "feel" and "expression" of the works undoubtedly "evoke a feeling of sameness." *JBJ Fabrics, Inc. v. Mark Indus., Inc.*, No. 86-4881 FFF, 1987 U.S. Dist. LEXIS 13445, at *9 (C.D. Cal. Nov. 4, 1987). A review of the designs makes clear that actionable copying has occurred. Compare Exs. 1 and 6; Ex. 10. An exemplar of the Infringing Garments, and fabric bearing the Subject Design, will be produced for the Court's review at time of hearing.

Moreover, where garments are concerned, courts have ruled that small differences should be disregarded given the equalizing effect of human wear. *See*

---

[4] The use of a similar color scheme is further evidence of infringement. *Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1095 (2d Cir.1977)(color should be considered in determining infringement); *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc*., 490 F.2d 1092, 1094 (2d Cir.1974) (same); *Roulo v. Russ Berrie & Co., Inc*., 886 F. 2d 931, 939 (7th Circuit 1989)(same). The fabric used to construct the Infringing Product uses substantially similar colors a the sample yardage of the Subject Design provided to REGO by UNITED prior to the infringement. It is important to note that REGO personally selected this color scheme from UNITED's line, and noted its desire to purchase fabric the Subject Design in this color scheme in an email (that included as an attachment a dress made from fabric bearing the Subject Design in this color scheme). Exs. 5, 8.

*Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1094 (2d Cir. 1974) (finding that "although small differences between the designs might be found to exist under courtroom scrutiny, those differences fade away within a few feet or absent sharp scrutiny"); *Just in Materials Designs, Ltd. v. Arise Textile, Inc.*, 1980 U.S. Dist. LEXIS 10822, *4-5 (S.D.N.Y. 1980) (finding that differences identified by defendant between prints used on women's dresses were not likely to attract attention from the average person when examined from four feet away and seen on a female body).

Given the above, and the lesser burden of substantial similarity required by the inverse-ratio rule, there remains no triable issue of fact as to copying, and infringement. As such this motion should be granted.

> *(b)    Vicarious liability*

BRYANT is also vicariously liable for REGO's sales of the Infringing Product. Vicarious liability is grounded in the tort concept of respondeat superior, *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2nd Cir.1971), and exists when a party "profit[ed] from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 US 913, 930-931 (2005). It is important to note that for purposes of vicarious liability, one **need not have knowledge** that the direct infringer is engaging in infringing conduct to be held vicariously liable. *Gershwin*, 443 F.2d at 1162 ; 3 Nimmer on Copyright § 12.04[A], at 12-63 n. 14 (collecting cases).

In this case, BRYANT profited from the infringement by selling the Infringing Garments provided by REGO, and did nothing to exercise their right (as the customer) to stop or limit the infringement.

> *(c)    Willful Infringement*

REGO is liable for willful infringement because it had the Subject Design copied by a third party, and did so with knowledge that the Subject Design was proprietary to UNITED. *Columbia Pictures Television v. Krypton Broad. of*

1   *Birmingham, Inc.*, 106 F.3d 284, 293 (9th Cir.1997) ( "willful" means acting "**with**

2   **knowledge** [that one's conduct constitutes copyright infringement" (emphasis

3   added). REGO cannot claim not to have known that the Subject Design was property

4   of UNITED given its obtainment of a sample of the design directly from UNITED.

5        At the very least, REGO recklessly disregarded UNITED rights in the Subject

6   Design when REGO sent UNITED's design overseas to be copied. "Reckless

7   disregard" fulfills the knowledge requirement, and supports a finding of willful

8   infringement.  *See, e.g., Dolman v. Agee*, 157 F.3d 708, 711, 715 (9th Cir. 1998)

9   (selling garments with knowledge that such sales are infringing constitutes willful

10  infringement); *Yurman Design, Inc. v. PAJ, Inc*., 262 F.3d 101, 112 (2d Cir.

11  2001)(willfulness found when "the defendant recklessly disregarded the possibility

12  that its conduct represented infringement.").

13       In this case, REGO clearly had knowledge that the Subject Design was the

14  property of UNITED. Despite this knowledge, REGO had the design knocked-off by

15  a third party overseas.

16       In addition, REGO had the Subject Design superficially modified in an attempt

17  to evade liability for infringement. Courts view such superficial modifications as

18  evidence of bad faith intent, and willful copyright infringement. *Concord Fabrics,*

19  *Inc. v. Marcus Bros. Textile Corp.,* 409 F.2d 1315 (2d Cir. 1969) ("While the trial

20  court placed great emphasis on the minor differences between the two design

21  patterns, we feel that the very nature of these differences only tends to emphasize the

22  extent to which the defendant has **deliberately copied** from the plaintiff.")(emphasis

23  added); *Atari, Inc. v. North American Philips Consumer Electronics Corp*., 672 F.2d

24  607, 619 (7th Cir. 1982) (defendant's "superficial changes . . . may be viewed as an

25  attempt to disguise an intentional appropriation of [Plaintiff's] expression."),

26  *superseded on other grounds*; *Runge v. Lee*, 441 F.2d 579, 582 (9th Cir. 1971)

27  ("Copying and infringement may exist, although the work of the pirate is so cleverly

28  done that no identity of language can be found in the two works"); *Universal Pictures*

- 18 -

*Co., Inc. v. Harold Lloyd Corp.*, 162 F.2d 354, 360 (9th Cir. 1947)("[An]

infringement is not confined to literal and exact repetition or reproduction; it includes

also the various modes in which the matter of any work may be adopted, imitated,

transferred, or reproduced, with more or less colorable alterations to disguise the

piracy."); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)

("... no plagiarist can excuse the wrong by showing how much of his work he did not

pirate."); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)

(infringement "cannot be limited literally to the text, else a plagiarist would escape by

immaterial variations."). The slight changes made at REGO's direction do not allow

Defendants to escape liability for infringement; instead, they provide evidence of

willfulness.

　　　　While the nature of the changes clearly evidences willfulness, they are also too

minor for Defendant to evade liability for its infringement. Only in those cases where

the original design is "deleted or so disguised as to be unrecognizable," is

infringement avoided. *See v. Durang*, 711 F.2d 141 (9th Cir. 1983). Given that the

modifications were a superficial attempt to avoid detection for clear copying, willful

infringement should be found.

## IV.　SUMMARY ADJUDICATION IS APPROPRIATE

　　　　UNITED has discharged the obligations as set forth in Fed.R.Civ.P. 56. As

such, UNITED respectfully requests that the Court summarily adjudicate one or more

of the following issues:

　　　　　　1)  Plaintiff owns a valid copyright for the Subject Design;

　　　　　　2)  REGO had access to the Subject Design;

　　　　　　3)  REGO is liable for copyright infringement;

*///*

- 19 -

1

2          4)  BRYANT is liable for copyright infringement; and

3          5)  REGO is liable for willful copyright infringement

4                               Respectfully submitted,

5                               DONIGER / BURROUGHS

6

7  DATED: September 27, 2011          By: <u>/S/ Scott A. Burroughs</u>

8                               Scott A. Burroughs, Esq.
                                  Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

## DECLARATION OF SHAR SIMANTOB

I, Shar Simantob, declare that I am of the age of majority, have personal knowledge of the following, except for those matters stated on information and belief, and state that if called as a witness I could and would competently testify as follows:

1.      I am the president of UNITED FABRICS INTERNATIONAL, INC. ("UNITED"), Plaintiff in this action. I have reviewed the documents and records relevant to this action, and I provide this Declaration from my personal knowledge.

2.      UNITED is a Los Angeles-based textile company. It creates original textile designs, or purchases the exclusive rights to designs that are created by reputable art studios.  It is critical to UNITED's business to be the exclusive source of its designs because this design portfolio allowed it to stand out in the market and compete against other companies that charged lower rates but were unable to offer trendy, fashion-forward designs.

3.      UNITED owns the rights to an original work of art that it developed for use on printed fabrics. UNITED has entitled this work "Valetta" ("Subject Design").  I have attached as Exhibit 1 a true and correct copy of the Subject Design. The Subject Design was created by UNITED's design team using source material that UNITED owned all rights in and had registered under U.S. Copyright No. Vau 994-046.

4.      The Subject Design was developed and finalized by UNITED and then prepared and formatted for use on textiles. The Subject Design at all relevant times was exclusively owned by UNITED. Prior to the infringement, the Subject Design was registered with the United States Copyright Office, where it was assigned U.S. Copyright No. VAu 978-308. I have attached as Exhibit 2 a true and correct copy of the registration for the Subject Design.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

5.      In registering the Subject Design, UNITED paid the required fee and deposited a copy of the Subject Design with the Copyright Office.

6.      UNITED has sampled and sold over sixty thousands of yards of fabric bearing the Subject Design to its customers.  The fabric was then manufactured into thousands of garments for sale at a wide variety of retail stores.

7.      One of the customers for fabric bearing the Subject Design was REGO. In October of 2008, REGO ordered from UNITED yardage of sample fabric printed with the Subject Design. REGO did this sampling on at least two occasions. I have attached as Exhibit 3 a true and correct copy of the invoice and packing list for this order.

8.      Thereafter, REGO interfaced with UNITED in regard to fabric bearing the Subject Design, ordering from UNITED an additional ten yards of sample fabric bearing the Subject Design in March of 2009. I have attached as Exhibit 4 a true and correct copy of the invoice and packing list for this order.

9.      REGO did not purchase from UNITED the fabric used to create the garments at issue in this case. We learned that REGO imported these garments from overseas and  sold them to BRYANT. BRYANT then sold the garments to the public ("Infringing Product"). I have attached as Exhibit 6 a true and correct copy of an image of one exemplar of Infringing Product that was sold by BRYANT.

10.     At the time of its March 2009 purchase of sample fabric bearing the Subject Design, Pat Rego (of REGO) contacted UNITED and personally requested the Subject Design fabric. I have attached as Exhibit 5 a true and correct copy of email correspondence sent to our company by Pat Rego, the principal of REGO. In requesting the Subject Design fabric, Pat Rego wrote "This is the print we like."  The fabric requested by REGO was in the same color scheme as the fabric that was later used by REGO to create the Infringing Garments. I have included as Exhibit 8 a true and correct copy of the

- 22 -

attachment included by REGO with one of its e-mails. This attachment depicts the fabric we provided to REGO, and reflects a color scheme that is substantially similar to the one later used by REGO for the Infringing Garments.

11.     I have attached as Exhibit 10 a true and correct copy of a full-sized image of a comparison of the Subject Design with the design on the Infringing Garments.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 19th day of September, 2011 at Los Angeles, California.


By:    _____
       SHAR SIMANTOB
       Declarant

## <u>DECLARATION OF SCOTT A. BURROUGHS, ESQ.</u>

I, Scott A. Burroughs, Esq., declare that I am at least 18 years old and am competent to make the testimony set forth below.  I am a shareholder at DONIGER / BURROUGHS APC, attorneys for Plaintiff in this action. I make this declaration in support of Plaintiff's Motion for Summary Adjudication.  If called as a witness I could and would competently testify as follows:

1.     I have attached as Exhibit 7 a true and correct copy of a purchase order produced by Pat Rego, Inc. that reflects its purchase of fabric bearing the knock-off design in April of 2009.

2.     I have attached as Exhibit 9 true and correct copies of the transcript of the proceedings held before Chief Judge Alex Kozinski.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 19th Day of September, 2011, at Culver City, California.


By:    /S/ Scott A. Burroughs
       Scott A. Burroughs, Esq.

- 24 -